IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-74-GMS |
| Plaintiff, : | |
| v. : | |
| : | |
| ELVIN DEMPSEY, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S POST-HEARING RESPONSE
## TO DEFENDANT'S MOTION TO SUPPRESS

The United States, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Shawn E. Martyniak, Special Assistant United States Attorney for the District of Delaware, for the reasons set forth below, respectfully requests that the Defendant's *Motion to Suppress Physical Evidence and Statements* be denied.

## I. INTRODUCTION.

The Government submits the following factual allegations:

On May 8, 2007, Wilmington Police Officers Randolph Pfaff and Danny Silva, along with other members of the Wilmington Police Vice Squad, searched Elvin Dempsey's residence at 941 Kirkwood Street, Wilmington, Delaware. Within the residence, the Officers located the following contraband: 1) 1268 heat-sealed plastic bags, which contained heroin and weighed 31.42 grams; 2) one baggie containing 2.60 grams of cocaine; 3) three zip-lock baggies containing 3.7 grams of marijuana; 4) a .22 caliber Taurus PT-22 handgun; 5) a .32 caliber Colt revolver; 6) five Remington .22 caliber rounds; and 7) numerous empty plastic baggies.[1]

---

[1] The information contained in this paragraph was taken from the police reports prepared by the officers.

On June 5, 2007, the Grand Jury returned a three count indictment charging the defendant with: 1) possession with intent to deliver heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c); 2) carrying a firearm during and in relation to a drug-trafficking crime (*i.e.*, Count I) and possessing the firearm in furtherance of said crime, in violation of 18 U.S.C. § 924(c)(1)(A); and 3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On November 8, 2007, the defendant filed a *Motion to Suppress Physical Evidence and Statements*. The defendant contended, *inter alia*, that the search warrant affidavit was defective because it "contained material misstatements and improper presentations of fact"[2] and requested a *Franks*[3] hearing. On December 11, 2007, the Government submitted its response, asserting that the search warrant affidavit contained sufficient information to establish probable cause and requesting that the defendant's motion be denied. On January 17, 2008 and February 21, 2008, this Court conducted a *Franks* hearing.

The defendant claims that two Wilmington Police Detectives included false information in the search warrant affidavit. Additionally, the defendant alleges that Detectives Pfaff and Silva and Lieutenant Sullivan did testify falsely before the Court when the three officers affirmed the information in the search warrant affidavit and testified that Eric Pittman did make the statements regarding the defendant and the additional heroin located at 941 Kirkwood Street. The defendant presented two witnesses: Tracey Watson and Eric Pittman. Tracey Watson did nothing to further the defendant's claim and Eric Pittman's testimony lacks credibility. In short, the

---

[2] See Defendant's *Motion* ¶ 11.

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

2

record does not support the defendant's allegations and the Government requests that his motion be denied.

## II. PROPOSED FINDINGS OF FACT.

On May 7, 2007, Lieutenant Liam Sullivan[4] learned from a past, proven reliable informant that "Ocbar", an individual Vice Detectives knew to be Elvin Dempsey, was traveling to Philadelphia, Pennsylvania, on the morning of May 8, 2007, to retrieve a large shipment of heroin. The informant told Lieutenant Sullivan that "Ocbar" would return to 941 Kirkwood Street, Wilmington, Delaware to "stash" the heroin. The informant further stated that "Ocbar" drove a rented, gold Nissan Altima with Pennsylvania plates. Lieutenant Sullivan passed this information on to Detectives Danny Silva and Randolph Pfaff. As a result of the information received from the informant, members of the Vice Division began surveillance of 941 Kirkwood Street. (Jan. T. 64).

As surveillance was conducted on the morning of May 8, 2007, Eric Pittman ("Pittman") and the defendant arrived at 941 Kirkwood Street between 8:45 a.m. and 9:15 a.m. (Jan. T. 31). Detective Chuck Emory radioed fellow officers noting that an individual had arrived at 941 Kirkwood Street, went inside the home, and was preparing to leave. (Jan. T. 64). Lieutenant Sullivan informed the other officers to follow the vehicle out of the area and then conduct a vehicle stop.

The vehicle left 941 Kirkwood Street, traveled through Wilmington, and was followed to Christiana Hospital by Officers. (Jan. T. 90). Members of the Vice Unit conducted a felony

---

[4]Lieutenant Sullivan is currently a police officer with the Elsmere Police Department. At the time of the defendant's arrest, he was a Sergeant in the Wilmington Police Department assigned to the Drug, Organized Crime, and Vice Division.

vehicle stop in the parking lot of the hospital. (Jan T. 69, 90). Pittman was driving the vehicle. Pittman's cousin, Tracey Watson ("Watson"), was in the passenger seat. (Jan. T. 52-3, 66, 69).

Although Officers originally thought the defendant may have been driving the vehicle, Lieutenant Sullivan recognized Pittman from previous encounters. (Jan. T. 52, 54). During the vehicle stop, Pittman repeatedly asked Lieutenant Sullivan if he could speak to him (Jan. T. 54); Lieutenant Sullivan did not interview Pittman at the scene. (Jan. T. 66). After he was removed from the vehicle, Pittman was searched. (Jan. T. 69). An empty heroin bag stamped "Hollywood" was recovered from Pittman.[5] (Jan. T. 69-70). The Officers testified that the baggie was not saved as evidence. (Jan. T. 61, 80). Detectives testified that because Pittman was not going to be charged, the baggie lacked any evidentiary value related to the investigation.[6] (Jan. T. 61-2, 80).

Pittman and Watson were separated by the officers during the vehicle stop and taken the Wilmington Police Station in separate vehicles. (Feb. T. 6-7). Pittman and Watson were kept separate until their release sometime after the search of 941 Kirkwood Street was concluded. (Feb. T. 6-7).

---

[5] All three of the Government witnesses recall that an empty plastic baggie was recovered from Pittman. Although unsure which officer at the scene discovered it, Lieutenant Sullivan testified that an empty baggie was recovered. (Jan. T. 60). Detective Silva recalled that an empty baggie stamped "Hollywood" was recovered from Pittman. (Jan. T. 69). Detective Pfaff did not see the empty baggie; however, he remembered Lieutenant Sullivan telling him about the recovered baggie at the Wilmington Police station after the vehicle stop of Pittman. (Jan. T. 94).

[6] Lieutenant Sullivan testified, "[the baggie] has no evidentiary value to me." (Jan. T. 62). Detective Silva testified, "[the baggie] was empty, had no value. We were not going to charge Mr. Pittman. He was cooperating. That's the way we looked at it. He was a cooperating subject." (Jan. T. 80).

4

After arriving at the Wilmington Police Station, Pittman was taken to an interview room. (Jan. T. 55). Initially, Detective Silva attempted to interview Pittman; however, Pittman stated that he wanted to speak to Lieutenant Sullivan. (Jan. T. 71). Pittman appeared to be scared and shaken, fearing that the defendant might harm him. (Jan. T. 54, 71). Pittman was also worried because of his status as a probationer. (Jan. T. 56).

Pittman and Lieutenant Sullivan spoke for several minutes alone before Pittman agreed to speak with the other Detectives. (Jan. T. 74). Thereafter, Lieutenant Sullivan and Detective Silva were present for most of the interview (Jan. T. 57); Detective Pfaff was present for a short time before he left the interview to type the search warrant for 941 Kirkwood Street. (Jan. T. 88). Detective Pfaff was present only long enough to gather required information for the warrant from Pittman. (Jan. T. 88).

During the interview, Pittman told the Officers that the defendant gave him one bag of heroin. (Jan. T. 56, 72, 95). Detective Pfaff specifically recalled Pittman telling him he received one bag of heroin from the defendant. (Jan. T. 95). Pittman stated that he sniffed the bag at 941 Kirkwood Street and then left with his cousin to go to Christiana Hospital. (Jan. T. 57). Pittman also gave the officers certain tactical information relating to 941 Kirkwood Street. Pittman told Detective Pfaff there were no dogs or kids in the residence and informed him that the residence was not fortified.[7] (Jan. T. 88). Pittman further advised the Officers that they needed to be

---

[7] Detective Pfaff stated that, as a member of the Wilmington Police SWAT team, he always asks interviewees certain tactical questions to ensure the safety of officers and the occupants of the location. Detective Pfaff always asks if there are any dogs or kids located in a target residence. He also asks if the target location is fortified and how many individuals are located in a target residence. (Jan. T. 88). Detective Pfaff memorialized Pittman's responses to these tactical questions in his notes from the interview. (Jan. T. 89, GX-1).

5

careful because there may be firearms located within 941 Kirkwood Street. (Jan. T. 57, 89).

The defendant called two witnesses, Eric Pittman and Tracey Watson; neither witness lends credible support to the defendant's accusations. Eric Pittman testified that he was driving the defendant's car on May 8, 2007. (Jan. T. 17-8). The defendant loaned Pittman the vehicle on the afternoon of May 7, 2007. Pittman kept the vehicle through the night, and continued to drive the vehicle on May 8th. (Jan. T. 31). Pittman was driving Watson to Christiana Hospital to visit an ailing relative when the vehicle was stopped by the Wilmington Police. (Jan. T. 20).

Pittman testified that the Officers removed him and Watson from the vehicle and separated them; the two were kept separate until they were released from custody sometime after the search of 941 Kirkwood Street was complete. (Jan. T. 39). Pittman stated that the Officers at the scene patted him down, but did not recover an empty heroin baggie (Jan. T. 42). Pittman and his cousin were then transported to the Wilmington Police station in separate vehicles. (Jan. T. 24-5, 39).

Pittman testified that officers attempted to interview him at the police station. (Jan. T. 43). Contrary to Lieutenant Sullivan's and Detective Pfaff's testimony, Pittman testified that he did not tell any of the officers he received any heroin from the defendant (Jan. T. 44). Pittman testified that he never told the officers the defendant had additional heroin located at 941 Kirkwood Street (Jan. T. 26); nor did he tell the officers they needed to be careful because the individuals in the residence were possibly armed. (Jan. T. 44). According to Pittman, Officer Pfaff never asked him whether there were any dogs in the residence. (Jan. T. 44). Pittman denied telling any of the Officers that 941 Kirkwood Street was not fortified. (Jan. T. 44-5).

Pittman's testimony is not credible. Pittman has been a close friend of the defendant

6

since meeting him in prison five years ago. (Jan T. 38). The defendant was in prison for a parole violation stemming from a New York drug trafficking conviction.[8] (Jan. T. 37). Pittman was with the defendant the day before the arrest and visited him twice on the morning of the arrest.[9] (Jan. T. 17-8). Pittman maintains close ties to the defendant even after this incident. He remains in contact with the defendant and members of his family, sending the defendant books during his period of incarceration. (Jan. T. 45-6).

Pittman insists that Officers did not recover an empty heroin baggie during the vehicle stop. Pittman had been a heroin user for years up to October of 2007.[10] (Jan. T. 35). In fact, Pittman tested positive for heroin during a probation visit on May 7, 2007, the day before the vehicle stop. (Jan. T. 97, GX-1). The Officers testimony of finding an empty heroin baggie on Pittman is entirely consistent with his historical heroin use.

Pittman testified that the Officers assured him they were not interested in him and he would be released after the defendant was arrested. (Jan. T. 25). Pittman makes this assertion despite the fact that, 1) the Officers observed Pittman at 941 Kirkwood on two separate occasions on the morning of May 8, 2007; 2) the nature of the investigation and information from the informant; and 3) Lieutenant Sullivan was familiar with Pittman, and his drug abuse history, for

---

[8]Pittman was convicted in New York for a felony drug trafficking crime under the assumed name of "Dino Johnson." Pittman violated the terms of his probation once in New York and an estimated 14-15 times while in Delaware. (Jan. T. 37).

[9]Pittman was with the defendant, and received the defendant's car from him, on May 7, 2007. Pittman also reported to his Probation Officer on that date and tested positive for heroin use. (Jan. T. 17-8, 97).

[10]Initially, Pittman testified that he used heroin regularly until July of 2007; he then revised his statement to include the months of September and October. (Jan. T. 35)

years prior to the vehicle stop. (Jan. T. 53).

In opposition to the Officer's testimony, and Detective Pfaff's notes, Pittman insists he did not tell the Officers that there was heroin at 941 Kirkwood while at the police station. According to Pittman, he was never asked whether there were dogs in the residence, did not tell the officers the residence was not fortified, never told the officers two people were in residence, and never stated the two individuals at 941 Kirkwood Street were possibly armed. (Jan. T. 44-5). These assertions lack credibility. The Officers information received information that a known heroin dealer was storing a large amount of heroin at 941 Kirkwood street. Based on this information, Officers started surveilling the residence on May 8th. The car Pittman is driving is seen leaving the residence and a vehicle stop is initiated; however, Pittman tells us the Officers never asked any questions relating to heroin or possible safety concerns of all of those involved.

Eric Pittman's testimony is not to be believed. Pittman's relationship with the defendant demonstrates his bias. Pittman was convicted of drug trafficking under an alias; he was a heroin user for five years prior to this incident; he is a frequent parole violator, and he admitted lying to the officers during an interview. Finally, Pittman's story is not to believed because it does not make sense. Wilmington Vice Officers had information the defendant had large amounts of heroin stored at his residence and, according to Pittman, the Officers do not ask Pittman any questions about heroin at 941 Kirkwood. Officer Pfaff testified he asks *every* person he interviews relating to a search warrant certain tactical questions; Pittman states he was never asked these questions. Because he is biased, not credible, and his story is unbelievable, Pittman's testimony should not be viewed as credible.

Tracey Watson's testimony does nothing to validate the defendant's argument. Watson

testified she was not aware that Pittman had been at 941 Kirkwood prior to picking her up. (Feb. T. 8). Pittman testified he returned to 941 Kirkwood after picking up Watson because the defendant was going to accompany them to the hospital (Jan. T. 34); Watson testified she had no idea why Pittman went back to 941 Kirkwood after picking her up. (Feb. T. 8). Upon arrival at 941 Kirkwood, Pittman went inside of the residence for approximately three minutes before he and the defendant emerged. (Feb. T. 4). Watson has no idea what Pittman and the defendant were doing in the residence for those three minutes. (Feb. T. 9). Watson also testified she was not aware of Pittman's history of heroin usage and had never seen him ingest any drugs. (Feb. T. 16).

Tracey Watson testified she and Pittman were stopped at Christiana Hospital. Watson testified that the vehicle stop was hectic and she was nervous and scared (Feb. T. 11-2). Watson stated she was still in the vehicle when Pittman was taken into custody. (Feb. T. 13). Watson noticed the Officers searching Pittman, but she was being removed from the vehicle as the search was taking place. (Feb. T. 13). Watson testified that she and Pittman were separated during the vehicle search and she did not see him until nearly a year afterwards. (Feb. T. 16). Watson testified that she has no idea what transpired between the Officers and Pittman while at the police station. (Feb. T. 15). Tracey Watson's testimony does nothing to support the testimony of Eric Pittman; nor does it advance the claims of the defendant.

### III. LEGAL ARGUMENT.

#### A. The Defendant has Failed to Show That the Officers Recklessly Disregarded the Truth in Creating the Affidavit for the Search Warrant.

The defendant has failed to show, by a preponderance of the evidence, that any false information was included in the search warrant affidavit or that there was any information included or excluded with reckless disregard for the truth. As a result, the defendant's motion

9

should be denied.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court determined that a defendant has the right to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. In evaluating the affidavits, there is a presumption of validity with respect to the affidavit supporting the search warrant. *Id.* at 171.

In *United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006), the Third Circuit examined the requirements a defendant must satisfy to overcome the presumption that a search warrant affidavit is valid. "First, the defendant must make 'a substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* at 383 (citing *Franks*, 438 U.S. at 171). If a substantial showing is made, a hearing is granted. At the hearing, it is the defendant's burden to show, by a preponderance of the evidence, that: (1) that the affiant knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination. *Sherwood v. Mulvihill*, 113. F.3d 396, 399 (3d Cir. 1997)(citing *Franks*, 438 U.S. at 171-2).

The Third Circuit has discussed what constitutes "reckless disregard for the truth." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). The Court stated, "In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is

10

asserting." *Id.*[11]

In order to prevail, a defendant must show by a preponderance of the evidence that the Officers authored the Search Warrant with a reckless disregard for the truth.

> A preponderance of evidence means evidence which is of greater weight, or is more convincing, than that offered in opposition...In other words, a preponderance is such proof as leads the trier of fact to find that it is more probable than not, or more likely than not, that a contested fact exists. A preponderance is attained where the evidence in its quality of credibility destroys and overbalances the equilibrium

32A C.J.S. *Evidence* § 1312 (2000). Therefore, the defendant's evidence must "overbalance the equilibrium" and lead the trier of fact to conclude that it is "more likely than not" that the Officers recklessly disregarded the truth.

Finally, even if the defendant makes a "substantial preliminary showing" and then, by a preponderance of the evidence, shows that the information in the affidavit of the search warrant was recklessly or intentionally untruthful, he may still not prevail. In *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993), the Third Circuit wrote, "[i]f the defendant makes the requisite substantial showing for a *Franks* hearing and then, at the hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause. *Id.* citing *Franks*, 438 U.S. at 155-6.

The pertinent paragraph of the Affidavit of the Search Warrant states,

> That your affiants can state that relative to the surveillance a motor vehicle stop was conducted and the subject stopped advised that he/she received a bag of heroin from "Ocbar". The subject further advised that "Ocbar" was inside the

---

[11] The defendant's claims focuses on the second prong in Russo, writing, "...the law enforcement official's inclusion of the false statement by Mr. Pittman was made with reckless disregard for the truth because the officers had 'obvious reasons to doubt the truth of what' they asserted." Defendant's *Memorandum*, page 10. The defendant fails in his argument.

11

house 941 Kirkwood Street and that he was currently in possession of more heroin and possibly armed with a firearm, and that there is a second subject who might also possess a firearm in the house.

All three of the Officers testified that Pittman stated he received a bag of heroin from the defendant. All three Officers testified that an empty heroin baggie was discovered on Pittman. According to the Detectives, Pittman told them additional heroin was located at 941 Kirkwood Street. The defendant warned the Detectives that individuals at the residence possibly had firearms. Detective Pfaff explained that he is mindful of his fellow officers safety and as a result asks a series of tactical questions to every subject he interviews relating to a search warrant. Detective Silva recalled the tactical questions that Detective Pfaff asked of Pittman. The Government introduced a copy of Pfaff's notes that memorialized the interview with Pittman. The Detectives' testimony is clear, consistent, and is consistent with the events of May 7th and 8th and the preparation of the search warrant for heroin at 941 Kirkwood Street. Additionally, the information in the warrant matches the testimony given by the Officers.

Pittman's testimony, on the other hand, does not make sense. Pittman testified that he did not say anything to the Detectives about heroin at 941 Kirkwood Street. Not only did he say nothing about heroin at the residence or receiving heroin from the defendant, he also stated that he was not asked any tactical questions by any of the Detectives. The tactical questions, as testified to by Detective Pfaff, demonstrate Pittman's unbelievability. As discussed earlier, the Officers possessed information that a major heroin dealer was storing his heroin at 941 Kirkwood Street. Everything the past, proven reliable informant told the officers, to that point, had been affirmed, but according Pittman, the one person the officers knew had been in the residence the

12

morning they intended to enter, the Officers failed to ask even the most elementary questions to ensure their safety.

Pittman's friendship with the defendant is a factor to consider when determining his credibility. Pittman is a personal friend of the defendant. He was with the defendant the day before the search of 941 Kirkwood Street. Pittman borrowed the defendant's car and picked him up in the morning. He visited the defendant a second time before driving to the hospital with his cousin. Pittman remains close to the defendant and his family. Finally, Pittman's heroin usage is a factor that bears on his credibility. He states that no empty bag was located on him, but admits to using heroin for five years prior to this incident, up to and including the day before the arrest.

Ms. Watson's testimony does nothing to support Pittman's testimony nor the defendant's claims. She knows nothing about what Pittman did or did not say to the Officers at the police station.

When evaluating the defendant's claims and determining whether the Detectives included false information in the body of the affidavit of the search warrant, the credibility of the witnesses is paramount. For the reasons stated above, the testimony of the three sworn police officers is consistent and credible; the testimony of Pittman, the defendant's long-time friend, is not to be believed.[12] When evaluating the claims of the defendant, it is clear that he has not met his burden of proof. The defendant has not "overbalanced the equilibrium" and shown by a preponderance of the evidence that the paragraph in question was included with a reckless

---

[12] Even if the Court were to determine that all of the witnesses recollections were equally credible, the defendant would still fail to meet his burden. It is the defendant's burden to show by a preponderance of the evidence that the Officers recklessly disregarded the truth. If all witnesses are equally credible, the defendant has not met this burden.

13

disregard for the truth.

### B. The Warrant is Valid Without the Questioned Paragraph.

Nevertheless, if the Court determines that an examination of the search warrant affidavit is necessary, the Government submits that the issuing magistrate had a substantial basis to conclude that probable cause existed to search the defendant's residence without the statements complained of. A search warrant is supported by probable cause if the affidavit thereto establishes, in light of the totality of circumstances that, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Even if the Court were to rule that the information contained in the last paragraph was stricken from the search warrant affidavit, a reviewing court would still have sufficient information to conclude that, "there is a fair probability that contraband or evidence of a crime" would be found at 941 Kirkwood Street.

In *Franks*, the Court wrote, "In the event that at that hearing the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and when the affidavit's false material is set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded..."[13] The Third Circuit wrote, "the defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit." *Yusuf*, 461 F.3d at 383.

Assuming, *arguendo*, the Court determines that the offending paragraph contained

---

[13]*Franks*, 438 U.S. at 156.

statements made with reckless disregard for the truth, the Court must then determine if the affidavit's remaining content is sufficient to establish probable cause. In *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005), the court wrote that it must examine the "totality of the circumstances in determining if a search warrant affidavit contains probable cause."

In *Yusuf*, the Third Circuit examined the procedure for analyzing an affidavit of a search warrant after excising offending paragraphs.[14] *Yusuf*, 461 F.3d at 388. The focus, the court wrote, "is whether the reformulated affidavit established probable cause to search [the target location]." *Id.* at 390. The court continued, "the task...is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit [,] ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband will be found at a particular place." *Id.* at 390 (quoting *Illinois v. Gates*, 462 U.S. at 238). The court went on to say, "[t]hat determination does not require absolute certainty that evidence of criminal activity will be found at a particular place, but reasonable to assume that a search will uncover such evidence." *Id.* at 390.

The search warrant affidavit must be viewed by looking to the totality of the information the affidavit contained rather than reviewing each section piece-meal. "The probable cause determination is to be made only after considering the totality of circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the

---

[14]In *Yusuf*, the Third Circuit found that the questioned paragraphs in the affidavit of the warrant were not included recklessly. However, the court went on to discuss the proper analysis of the warrant had the offending paragraphs been added with reckless disregard for the truth. *Yusuf*, 461 F.3d 388.

officer's specialized training and experiences. *Id.* citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002).[15]

The search warrant was issued for 941 Kirkwood Street, Wilmington, Delaware, and for Elvin G. Dempsey. The affidavit provides, "...these affiants are familiar with a subject nicknamed "Ocbar" and know that his real name is Elvin Dempsey BM Dob 8/24/68." Furthermore, the Warrant's affidavit states that on May 8, 2007, the defendant had a warrant against him for the charges of "Robbery 1st and Possession of a Firearm During the Commission of a Felony."

The search warrant also included information from a past, proven reliable informant that the defendant would travel to Philadelphia on the morning of May 8, 2007 to purchase heroin and return to 941 Kirkwood Street. The informant supplied information that the defendant would be driving a rented, gold Nissan Altima with Pennsylvania plates. The search warrant also notes that surveillance that was conducted at 941 Kirkwood Street on the morning of May 8, 2007. The surveillance revealed that the defendant arrived that morning in a gold Nissan Altima bearing Pennsylvania tags, just as the informant told the officers. A vehicle check revealed that the Altima was rented from Enterprise Leasing in Radnor, Pennsylvania.

The affidavit states that the Officers were familiar with "Ocbar" and knew him to be the

---

[15]In citing *Arizu*, the court wrote, "the Supreme Court rejected the Ninth Circuit's approach of individually weighing and considering in isolation each of the factors relied upon by a government agent...The Supreme Court explained that such an approach was inconsistent with a totality of circumstances approach...'The court appeared to believe that each observation by [the agent] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry*, however, precludes this sort of analysis.'" *Yusuf*, 461 F.3d at 374 (quoting *Arizu*, 534 U.S. at 274.)

16

defendant. The Officers also knew the defendant had arrest warrants for felony offenses. The Officers relied on information provided by a past, proven reliable informant. At the time the affidavit was authored, Officers had received information indicating the defendant would be arriving at 941 Kirkwood Street in the morning on May 8, 2007 to store his heroin. Surveillance was conducted and the defendant did arrive at the location as expected. The vehicle the defendant traveled in matched the exact description given by the informant.

When reviewing the search warrant affidavit, the totality of the circumstances must be reviewed to determine if a magistrate had a substantial basis to conclude that probable cause existed to search the defendant's residence. In other words, in light of the totality of circumstances, is there a fair probability that contraband or evidence of a crime will be found in a particular place? In the case before the Court, even if the last paragraph of the affidavit of the search warrant was excised, there was probable cause to determine that Elvin Dempsey and heroin would be found at 941 Kirkwood Street, Wilmington, Delaware.

## IV. CONCLUSION.

The Government respectfully asserts that the defendant's argument lacks merit and that his motion should be denied. The defendant has failed to show by a preponderance of the evidence that the Officers included any information with a "reckless disregard for the truth." Furthermore, even if the last paragraph were stricken from the warrant, the affidavit of probable cause contains sufficient information for a magistrate to determine that probable cause existed.

WHEREFORE, the United States respectfully asks the Court to deny the Defendant's Motion.

                                Respectfully submitted,

                                COLM F. CONNOLLY
                                United States Attorney

                                By:    /s/ Shawn Martyniak
                                Shawn E. Martyniak (De. I.D. No. 4433)
                                Special Assistant United States Attorney
                                1007 Orange Street, Suite 700
                                P.O. Box 2046
                                Wilmington, Delaware 19899-2046

Dated: March 25, 2008.

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action No. 07-74-JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELVIN DEMPSEY, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

The Court, having considered the Government's *Response* to the Defendant Dempsey's *Motion to Suppress Evidence and Statements*:

IT IS HEREBY ORDERED this _____ day of _____, 2008, that the Defendant's motion is denied for the reasons stated in the Government's response.

_____
The Honorable Gregory M. Sleet
United States District Court.